# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OPHELIA FETTER,                          :
                                         :
          Plaintiff                      :    Civil Action No. 4:05-CV-00462
                                         :
vs.                                      :    JURY TRIAL DEMANDED
                                         :
JERSEY SHORE AREA SCHOOL                 :    The Honorable John E. Jones, III
DISTRICT,                                :
                                         :    *(Electronically Filed)*
          Defendant.                     :

## BRIEF IN SUPPORT OF MOTION TO INTERVENE BY
## UNITED NATIONAL SPECIALTY INSURANCE COMPANY

Gale White (I.D. #46485)
**WHITE AND WILLIAMS LLP**
1800 One Liberty Place
Philadelphia, PA  19103
Tel. (215) 864-7000
Fax  (215) 864-7123

## **TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY ................................................................ 1

II.     STATEMENT OF FACTS ............................................................... 2

        A.     The Fetter Complaint........................................................ 2

        B.     The United National Policy ............................................. 4

III.    STATEMENT OF QUESTION INVOLVED ............................... 6

IV.     ARGUMENT ................................................................................ 7

        A.     United National Is Entitled To Intervene As A Matter Of Right
               Pursuant to Fed. R. Civ. Proc. 24(a) ........................... 7

               1.     Timeliness ............................................................. 8

               2.     Sufficient Interest in the Litigation .................... 10

               3.     Impairment of Interest......................................... 10

               4.     Adequacy of Representation ................................. 15

        B.     Alternatively, United National is Entitled to Permissive
               Intervention Pursuant to Fed. R. Civ. Proc. 24(b)........... 15

               1.     The Requirements of Rule 24(b) Are Satisfied....... 15

               2.     Given the Limited Intervention Sought by United
                      National, An Independent Jurisdiction Basis is Not
                      Required ............................................................. 18

V.      UNITED NATIONAL'S PROPOSED INTERROGATORY FOR
        THE JURY ................................................................................. 19

VI.     CONCLUSION............................................................................ 19

i

# TABLE OF AUTHORITIES

## Cases

*Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995) .................... 9,11,12

*Fidelity Bankers Life Ins. Co. v. WEDCO, Inc.*, 1984 U.S. Dist. LEXIS
    18921 (D. Nev. 1984) ................................................................................. 17

*In Re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333 (E.D. Pa. 2004) ........ 18

*Knowling v. Hunt,* 577 A.2d 1144 (Conn. Super. 1990)........................................ 17

*Mountain Top Condominium Ass'n. v. Dave Stabbert Master Builder Inc.*,
    72 F.3d 361 (3rd Cir. 1995) ................................................................. 8,9,10

*Plough, Inc. v. Int'l Favors and Fragrances*, 1982 U.S. Dist. LEXIS 17256
    (W.D. Tenn. 1982) ................................................................................. 17

*Rapp v. Cameron*, 2001 U.S. Dist. LEXIS 17046 (E.D. Pa. 2001) ........................ 16

*Schmidlin v. D&V Enterprises*, 2000 Ohio App. LEXIS 2336
    (Ohio Ct. App. 2000) ............................................................................. 14

*Stidham v. Millvale Sportsmen's Club*, 421 Pa. Super. 548, 618 A.2d 945
    (1992)................................................................................................. 9,11,13

*Thomas v. Henderson*, 297 F.Supp. 2d 1311 (S.D. Ala. 2003) ........................ 17,18

*Tomcany v. Range Construction*, 2004 Ohio App. LEXIS 4805
    (Ohio Ct. App. 2004) ............................................................................. 17

## Rules

Rule 24(a) of the Federal Rules of Civil Procedure ................................................. 7

Rule 24(b) of the Federal Rules of Civil Procedure . ........................................ 15,18

DOCS_PH 1884795v.1

Pursuant to Federal Rule of Civil Procedure 24, United National Specialty Insurance Company (f/k/a Hallmark Insurance Company) ("United National"), the insurance carrier for Defendant Jersey Shore Area School District (the "School District"), seeks to intervene in this case for a narrow purpose – to participate in the proposal and formulation of specific instructions, specific interrogatories and/or special verdict forms to be provided to the jury. A copy of United National's proposed Complaint for Intervention is attached as Exhibit "A" to the accompanying Appendix of Exhibits to Brief in Support of Motion to Intervene by United National Specialty Insurance Company (the "Accompanying Appendix").

United National is not asking for any additional discovery, is not seeking to inject new claims or causes of action into this case and is not seeking to delay the upcoming trial. Rather, United National seeks to prevent the possible loss of the opportunity to enforce a sublimit in its policy which is specifically applicable to back wages that are being sought and which may be awarded in this case.

## I.    PROCEDURAL HISTORY

On March 3, 2005, Plaintiff Ophelia Fetter filed her Complaint in this matter against the School District. On May 24, 2005, the School District filed its Answer and Affirmative Defenses. At present, a settlement conference is scheduled for June 20, 2006, a pre-trial conference is scheduled for August 1, 2006 and jury selection is scheduled for September 6, 2006.

## II.  STATEMENT OF FACTS

### A.  The Fetter Complaint

In her Complaint, Fetter alleges that she was born in 1942 and is of Chinese national origin.  She alleges that she began her employment with the School District in 1993 as an Assistant Principal and was promoted to Principal in 1994 (*see* Complaint, ¶¶9-10).

The Complaint alleges that, beginning in or around November 1997, Fetter was harassed by the School District's Superintendent, Peter K. Uhlig, Sr.  This harassment allegedly included the following:

- replacing Fetter's secretary without her knowledge or approval and concealing this personnel action from Fetter (*see* Complaint, ¶15);

- belittling Fetter and discouraging her from pursuing a Superintendent's certification with the Pennsylvania Department of Education by telling her she was "too old" to become a Superintendent (*see*  Complaint, ¶15);

- discouraging Fetter from pursuing "Blue Ribbon" school status for the elementary school where she was Principal (*see*  Complaint, ¶15); and

- treating Fetter's attempts to express her opinions and rights as a professional employee as acts of insubordination (*see* Complaint, ¶15).

As a result of these alleged actions, Fetter filed a complaint with the Pennsylvania Human Relations Commission in May 2000, alleging that the harassment was the result of discrimination based upon age, sex and national origin. *See* Complaint, ¶16.

Sometime thereafter, Fetter became unable to work due to health problems. On or about February 22, 2002, when Fetter allegedly was able to return to work, she was advised by the School District that she had abandoned her position and that she should not return. This action by the School District was allegedly undertaken in retaliation for the filing of Fetter's May 2000 discrimination complaint. *See* Complaint, ¶24.

The Complaint contains the following counts:

Count I:    Discriminatory Treatment in Violation of Title VII;

Count II:    Retaliation Under Title VII;

Count III:    Discrimination in Violation of the Age Discrimination Employment Act;

Count IV:    Retaliation Under the Age Discrimination Employment Act

3

Count V:    Discrimination in Violation of the Pennsylvania Human

Relations Act; and

Count VI:    Retaliatory Discharge Under the Pennsylvania Human

Relations Act.

In the Complaint, Fetter seeks damages for, *inter alia*, emotional distress, expungement of reprimands from her personnel file, attorneys fees and costs, punitive damages, lost retirement credit, medical expenses and lost wages. Fetter's demand for lost wages includes: (a) a demand for $185,256.15 representing lost wages from January 22, 2001 through February 21, 2005; and (b) a demand for lost wages after these dates "and continuing." *See* Complaint, pp. 11, 13, 16.

## B.    **The United National Policy**

Hallmark Insurance Company (n/k/a United National Specialty Insurance Company) issued a School Board Legal Liability Policy (No. LSB 0000839) to the Jersey Shore Area School District with a policy period from July 1, 2000 to July 1, 2001 (the "United National policy"). The Insuring Agreement provides, in part, that:

> The Company will pay on behalf of the INSURED all
> sums which the INSURED shall become legally
> obligated to pay as DAMAGES to which this insurance
> applies, not exceeding the Limit of Liability, as a result
> of CLAIMS first made against an INSURED during the
> POLICY PERIOD ... by reason of WRONGFUL ACTS
> OR WRONGFUL EMPLOYMENT ACTS in the

performance of duties on behalf of the EDUCATIONAL
ENTITY.

A copy of the United National policy is attached as Exhibit "B" to the

Accompanying Appendix.

United National is providing a defense to the School District under a

reservation of rights. *See* Reservation of Rights Letters dated November 28, 2005

and April 19, 2006 attached as Exhibits "C" and "D", respectively, to the

Accompanying Appendix.

The United National policy contains a "Back Wages Sublimit

Endorsement." This endorsement includes a specific exclusion for "overtime,

future wages or similar CLAIMS, even if designated as liquidated DAMAGES;

and for CLAIMS arising from a collective bargaining agreement." This

endorsement also provides that the United National policy's coverage for back

wages is subject to a $50,000 per claim sublimit. This portion of the endorsement

states as follows:

> B)     The following is added to ARTICLE IV – LIMITS
> OF LIABILITY:
>
>> 4.     Subject to a limit not to exceed
>>
>> **$50,000 each CLAIM** and
>>
>> $100,000 in the ANNUAL AGGREGATE
>>
>> the Company shall pay for DAMAGE(S) IN
>> EXCESS OF THE DEDUCTIBLE shown on the
>> Declarations, arising out of CLAIMS for **back**

5

**wages**.  All payments made under this provision shall be included in the Limit of Liability set forth in the Declarations and are not in addition to those limits of liability.

(emphasis added).

For the reasons discussed below, United National should be permitted to intervene in this action for the limited purpose of participating in the proposal and formulation of specific instructions, specific interrogatories and/or special verdict forms to ensure that any jury award includes an itemization of the damages being awarded, including the specific amount of any damages being awarded for back wages[1].

## III.    STATEMENT OF QUESTION INVOLVED

**Question #1**:  Is United National entitled to intervene in this action?

**Suggested Answer**:  Yes.  United National is the Defendant's insurance carrier.  United National has been defending this action since its inception and the School District will look to United National to indemnify it for any judgment rendered herein.

---

[1]    As noted above, the "Back Wages Sublimit Endorsement" includes a specific exclusion for "overtime, future wages or similar CLAIMS, even if designated as liquidated DAMAGES; and for CLAIMS arising from a collective bargaining agreement."  Certain of the damages sought by Fetter may fall within the scope of this exclusion, including but not limited to "lost T-D retirement credit".  While United National is not seeking a ruling on this (or any other substantive coverage issue), the potential applicability of this exclusion further

The disposition of this action could, as a practical matter, impair or impede United National's ability to protect its interests in this case. As explained in greater detail below, a general verdict in this case could seriously impede United National's ability to enforce the $50,000 sublimit for back wages in its policy. United National's interests are not adequately protected by the existing parties as neither Plaintiff nor Defendant has any incentive to preserve United National's rights concerning coverage.

## IV.  ARGUMENT

### A.  United National Is Entitled To Intervene As A Matter Of Right Pursuant to Fed. R. Civ. Proc. 24(a)

Rule 24(a) of the Federal Rules of Civil Procedure states:

> Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action . . .(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Courts in the Third Circuit must apply the following four-prong test to a motion to intervene of right under Rule 24(a): (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action;

serves to illustrate the paramount importance of a clearly itemized jury verdict in

7

and (4) the interest is not adequately represented by an existing party in the litigation. *See Mountain Top Condominium Ass'n. v. Dave Stabbert Master Builder Inc.*, 72 F.3d 361, 366 (3rd Cir. 1995). United National's Motion satisfies all four criteria for intervention of right.

### 1.    Timeliness

United National's application is timely. The timeliness of a motion to intervene is determined from all the circumstances and, in the first instance, by the trial court in the exercise of it sound discretion. *Mountain Top*, 72 F.3d at 369. To determine whether an intervention motion is timely, this Court must consider (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. *Id.*

In determining whether an application for intervention as of right is timely, the *Mountain Top* court cautioned that:

> … since in situations in which intervention is of right the would-be intervenor may be seriously harmed if he is not permitted to intervene, ***courts should be reluctant to dismiss a request for intervention as untimely***, even though they might deny the request if the intervention were merely permissive.

*Id.* (emphasis added).

For purposes of intervention, the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties

this case.

already involved. *Mountain Top*, 72 F.3d at 370. Therefore, as acknowledged by the *Mountain Top* court, intervention has been allowed even after the entry of a judgment.

In this case, trial is nearly four months away. Accordingly, no prejudice will result to the parties if United National is allowed to intervene. This conclusion is particularly apparent when considering that United National will not seek any additional discovery, will not make any substantive claims and will not seek an adjournment of the present trial date. Indeed, the level of involvement sought by United National is very minimal. Specifically, United National wishes to protect its right to rely upon the $50,000 sublimit for back wages. This is a crucial issue for United National in light of the fact that, as noted above, Fetter seeks (at a minimum[2]) $185,256.15 in back wages from the School District. Should a general verdict be entered that fails to distinguish back wages from other types of damages sought by the Plaintiff, United National may be precluded from later asserting that the $50,000 back wages sublimit is applicable (*see* discussion of *Stidham* and *Butterfield* cases, *infra*).

In terms of protecting this right, United National would limit its involvement in this case to requesting that the court propound a small number of specific

---

[2]    While Fetter's Complaint includes a specific demand for "net lost wages", other elements of damage sought in the Complaint may also qualify as "back

9

instructions, specific interrogatories and/or special verdict forms to the jury. The purpose of such action would be to safeguard against a general verdict that could effectively preclude United National from later enforcing the $50,000 sublimit on back wages. Trial would not be delayed by virtue of this limited involvement.

### 2.    Sufficient Interest in the Litigation

A proposed intervenor need not have an interest in every aspect of the litigation. It is entitled to intervene as to specific issues so long as its interest in those issues is significantly protectable. *Mountain Top*, 72 F.3d at 367. The applicant must show that there is a tangible threat to a legally cognizable interest in order to intervene. *Id*. at 366. Here, United National is the liability insurer for the Defendant, and United National understands that Plaintiff intends to present damage claims against the Defendant for an amount in excess of $400,000. Defendant has demanded coverage from United National and will look to United National for indemnification for any recovery Plaintiff makes against it. United National thus has a direct economic interest in the outcome of the case.

### 3.    Impairment of Interest

United National's substantial interest in the outcome of the underlying case may be affected or impaired if intervention is not permitted. Under Pennsylvania law, a liability insurer may be precluded from relitigating coverage-related issues

---

wages" under the United National policy, including but not limited to "out of

DOCS_PH 1884795v.1

that have already been resolved as part of an underlying suit. *Stidham v. Millvale Sportsmen's Club*, 421 Pa. Super. 548, 618 A.2d 945, 954-55 (1992); *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646, 651 (1995); *see also* A. Windt, Insurance Claims and Disputes, 4th ed. (2001) (as a general rule, once a final judgment has been entered on behalf of the party suing the insured, the insurer may not, absent collusion, reopen the factual or legal basis of the judgment when the insured makes a coverage claim).

In *Stidham*, policyholder McLaughlin shot and killed a bar patron while in an intoxicated state. He pleaded guilty to the crimes of third degree murder and aggravated assault. In the wrongful death case against McLaughlin that followed, McLaughlin's insurer denied coverage, invoking an exclusion in the homeowner's policy that precluded coverage for harm that was "expected or intended" by the policyholder. Plaintiffs recovered a substantial verdict against McLaughlin grounded in negligence. In the coverage action that followed, the Superior Court held that McLaughlin's homeowner's insurer was collaterally estopped "from contending that McLaughlin acted other than negligently" because it "had the opportunity to litigate the issue of McLaughlin's intent and must, therefore, be bound by the findings that those actions were both negligent and the legal cause of Stidham's death." 421 Pa. Super. at 568, 618 A.2d at 955.

---

pocket health insurance premiums."

*Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995), went even further, imposing a burden on the insurer disputing coverage to appear by intervention or otherwise at the trial of the underlying case and make its case for resolving coverage-related factual issues as part of the liability trial. In *Butterfield*, the plaintiffs tried both direct and vicarious liability punitive damage claims against the hospital. The jury returned a punitive damages verdict against the hospital without specifying whether its finding was based on direct or vicarious liability theories. It was asserted that, under Pennsylvania law, public policy precludes insurance coverage for direct punitive damage awards, but permits coverage for policyholders who are found vicariously liable for a third party's punitive damages. Noting that a representative of Lexington was present in the courtroom at trial, the Court barred Lexington from litigating in a subsequent coverage action the question whether punitive damages were direct or vicarious in origin:

> While in court, in chambers or through the defense attorneys handling the case, Lexington had the opportunity to request specific instructions on the question, specific interrogatories, or special verdict forms. Moreover, if necessary, Lexington had the option to intervene. Yet, Lexington did not pursue any means available to them at the outset of the trial, during the trial, or immediately following the verdict in order to definitively determine its duty to indemnify the [hospital].

12

448 Pa. Super. at 24-26, 670 A.2d at 658 (citing *Stidham v. Millvale Sportsmen's Club*).

In this case, the Complaint seeks (at a minimum) the following damages for back wages: (1) "net lost wages from January 22, 2001 through February 21, 2005 ($185,256.15); and (2) "lost wages ... from after the dates listed above and continuing. *See* Complaint, pp. 11, 13, 16.

The United National policy limits the amount of coverage for back wages to $50,000. The damages sought by Fetter for back wages far exceed this amount. If the jury returns a general verdict that fails to distinguish between back wages and other types of alleged damages, United National faces the prospect of possibly being barred from later asserting that the damages awarded by the jury were on account of back wages and that the back wage amount is subject to the $50,000 sublimit.

Accordingly, United National seeks to have the Court propound specific instructions, specific interrogatories and/or special verdict forms that will seek (1) clarification from the jury as to the claim or claims forming the basis for the verdict; and (2) an itemization of any damage award in terms of amounts being awarded for, *inter alia*, each of the following: back wages, emotional distress, attorneys fees/costs, punitive damages, lost retirement credit, medical expenses, health insurance premiums and pre-judgment or post-judgment interest.

Although we have not located any Pennsylvania authorities specifically addressing an insurer's right to intervene in the context of a sublimit provision, the Ohio case of *Schmidlin v. D&V Enterprises*, 2000 Ohio App. LEXIS 2336 (Ohio Ct. App. 2000) (Accompanying Appendix, Exhibit "E") is directly on point. There, plaintiffs brought an action against D&V (the insured) alleging that employees of D&V served alcohol to obviously inebriated customers who then assaulted the plaintiffs. D&V's insurance policy had an overall policy limit of $300,000 <u>but contained a sublimit for liquor-related liability in the amount of</u> <u>$25,000.</u>

As United National seeks to do in this case, D&V's insurer sought to intervene for the limited purpose of submitting appropriate jury interrogatories and/or jury instructions to ascertain the legal basis for any judgment against D&V and thus to determine the applicable policy limit. *Id.* at *4. The court granted the requested intervention, reasoning as follows:

> The extent of Great Midwest's financial exposure, if any,
> would depend on the legal basis upon which Schmidlin
> [the plaintiff] obtained a verdict against the D&V
> defendants. That question could be answered only by
> this jury.

*Id.* at *15.

14

### 4.   Adequacy of Representation

The parties of record will not adequately represent United National's

interest.  Plaintiff and Defendant both have an incentive to seek a jury verdict that

lacks specificity so that they can access United National's liability policy and fund

the verdict.  They have no reason to seek clarification from the jury as to the

specific components of any damage award.  United National's interests are

unrepresented by the parties on the current state of the record.

### B.   Alternatively, United National is Entitled to Permissive Intervention Pursuant to Fed. R. Civ. Proc. 24(b)

#### 1.   The Requirements of Rule 24(b) Are Satisfied

Rule 24(b)(2) of the Federal Rules of Civil Procedure states:

> Permissive Intervention.  Upon timely application anyone
> may be permitted to intervene in an action: … (2) when
> an applicant's claim or defense and the main action have
> a question of law or fact in common … In exercising its
> discretion the court shall consider whether the
> intervention will unduly delay or prejudice the
> adjudication of the rights of the original parties.

As more fully discussed above, United National's application is timely

because trial is more than four months away.  Moreover, the proposed intervention

will not result in any delay or prejudice since the level of United National's

proposed involvement at trial is so minimal.  United National will not seek any

discovery nor will it seek to interpose any new claims or causes of action into the

case.  Finally, it is clear that there are common factual questions involved - the

15

applicability of United National's back wages sublimit is obviously dependent

upon the factual basis for any damage award.

The Eastern District of Pennsylvania has recognized that an insurer seeking

to preserve a coverage defense should be permitted to intervene in a case against

its insured pursuant to Rule 24(b). In *Rapp v. Cameron*, 2001 U.S. Dist. LEXIS

17046 (E.D. Pa. 2001) (Accompanying Appendix, Exhibit "F"), the insurer (Titan

Indemnity) sought to intervene in a case against its insured, a police officer,

brought by the estate of man killed by the officer in the course of his duties. Titan

sought to intervene in order to establish that the shooting was excluded under its

policy. Finding that the intervention would not result in any prejudice to the

parties, the court permitted Titan to intervene in a limited fashion.[3]

Notably, the scope of the intervention sought by United National in this case

is far less expansive than that sought by Titan in the *Rapp* case. In *Rapp*, the

insurer sought to file a declaratory judgment action on the issue of coverage for the

shooting. In contrast, here, United National seeks to intervene solely for the

purpose of preserving its coverage defense through specific instructions, specific

interrogatories and/or special verdict forms. Based upon this limited involvement,

---

[3] The court placed several conditions upon the intervention, *e.g.*, Titan could not
reopen any questions that had previously been decided, Titan would be bound by
all evidence adduced in the case prior to intervention and discovery proceedings
would stand without duplication.

16

no prejudice will result to either of the parties in this case if United National is allowed to intervene.

Courts around the country have likewise recognized that, where an insurer seeks intervention for the limited purpose of submitting special interrogatories to the jury to obtain a clarification of damages, intervention should be allowed. *See Tomcany v. Range Construction,* 2004 Ohio App. LEXIS 4805 (Ohio Ct. App. 2004) (Accompanying Appendix, Exhibit "G") (intervention allowed to permit carrier to "submit jury instructions enabling it to ascertain whether any potential damages would be covered under the relevant insurance policy"); *Thomas v. Henderson,* 297 F.Supp. 2d 1311 (S.D. Ala. 2003) (allowing insurer to intervene "for the limited purpose of submitting special jury interrogatories and/or a special verdict form"); *Knowling v. Hunt,* 577 A.2d 1144 (Conn. Super. 1990) (motion to intervene granted to allow carrier, at a minimum, to "have special interrogatories submitted to the jury and verdict forms to resolve the question [as to whether defendant's acts were intentional and therefore excluded from coverage]"); *Fidelity Bankers Life Ins. Co. v. WEDCO, Inc.,* 1984 U.S. Dist. LEXIS 18921 (D. Nev. 1984) (Accompanying Appendix, Exhibit "H") (limited intervention allowed in order to "make possible a division of the money damages between covered and non-covered acts of the insureds"); *Plough, Inc. v. Int'l Favors and Frangraces,* 1982 U.S. Dist. LEXIS 17256 (W.D. Tenn. 1982) (Accompanying Appendix,

17

Exhibit "I") ("CU [the insurer] is to be allowed to intervene for the very limited

purpose of submitting special interrogatories, at pre-trial and trial, to the

Court...").

### 2.    Given the Limited Intervention Sought by United National, An Independent Jurisdiction Basis is Not Required

Generally, permissive intervention requires an independent basis of subject

matter jurisdiction. *See In Re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333

(E.D. Pa. 2004).  However, this requirement (along with the other requirements for

permissive intervention) have been interpreted flexibly when a non-party seeks

intervention for a limited purpose. *See Id.* at 339.  Thus, in *Linerboard*, the Court

held that an independent jurisdictional basis was not required where the intervenors

did not ask the Court to exercise jurisdiction over an additional claim on the merits,

but only sought modification of a previously entered confidentiality order.

Here, as explained above, United National seeks to intervene for a very

limited purpose, *i.e.*, participating in the proposal and formulation of specific

instructions, specific interrogatories and/or special verdict forms.  United National

is not seeking to inject any new claims or causes of action into this case.

Accordingly, United National need not demonstrate an independent jurisdictional

basis in order to establish its entitlement to intervene under Rule 24(b).  *See*

*Thomas,* 297 F.Supp. 2d at 1326 ("… Old Republic properly asserts that it is

exempt from that requirement [of independent jurisdictional grounds] given that it does not seek to litigate a substantive claim here.").

## V.  UNITED NATIONAL'S PROPOSED INTERROGATORY FOR THE JURY

If allowed to intervene, United National proposes that the jury be provided with the following special interrogatory[4]:

1.    If you believe that damages should be awarded to the Plaintiff, please state the specific monetary amount being awarded for:

Lost wages from January 22, 2001 through the present $_____.

Lost retirement credit $_____.

Out of pocket medical expenses $_____.

Out of pocket health insurance premiums $_____.

Emotional distress $_____.

Punitive damages $_____.

Attorneys fees and costs $_____.

Prejudgment interest $_____.

## VI.  **CONCLUSION**

For all of the foregoing reasons, United National respectfully requests that the Court:

---

[4]    This interrogatory would be subject to revision to reflect the actual elements of damage that go to the jury.

(i)  grant United National's Motion to Intervene; and

(ii)  allow United National to propound specific instructions, specific interrogatories and/or special verdict forms to the jury in order to guard against a general verdict, which could severely prejudice United National's right to enforce the policy's applicable sublimit for back wages.

Dated:  May 10, 2006

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

**/S/ Gale White**

By:_____

Gale White (I.D. #46485)
1800 One Liberty Place
Philadelphia, PA  19103
Tel. (215) 864-7000
Fax  (215) 864-7123

*Attorneys for United National*
*Specialty Insurance Company*

20