```
            UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF PENNSYLVANIA
```

**OPHELIA FETTER**,                         :   CASE NO. 4:05-CV-0462
        Plaintiff          :
                           :
      v.                           :
                           :
**JERSEY SHORE AREA SCHOOL**                :
**DISTRICT**,                               :   JUDGE JONES
        Defendant          :


## PLAINTIFF'S PRETRIAL MEMORANDUM

Date conference was held by counsel:    **7/21/06**

    A.   A brief statement as to federal court jurisdiction.

    This Court has jurisdiction over this matter pursuant to 42 U.S.C.A. §2000e-5(f), 29 U.S.C.A. §626(c)(1) and 28 U.S.C. §1331, as well as pendant jurisdiction over the Plaintiff's state law claims under 28 U.S.C. §1367.

    B.   A summary statement of facts and contentions as to liability.

**Facts**

    Ophelia Fetter had been an elementary principal for the Jersey Shore Area School District since August 1994. Mrs. Fetter, at all times relevant hereto, was certificated by the Secretary of the Department of Education and a tenured professional employee under the Public School Code (24 P.S. §11-1120 et. seq.).

    Beginning in or around November 1997, Mrs. Fetter began to be harassed by the then new Superintendent of the Jersey Shore Area School District, Peter Uhlig. By early 2000, this harassment manifested itself in a number of ways – replacing Mrs. Fetter's secretary without her advance knowledge or approval; discouraging Mrs. Fetter from pursuing a certification to be a school superintendent by telling her that she was "too old"; by discouraging her from pursuing Blue Ribbon school status for her elementary school; by ignoring, belittling and/or insulting the Plaintiff at staff meetings; and by giving her two reprimands. On or about May 15, 2000, Mrs. Fetter filed a Complaint before the Pennsylvania Human Relations Commission against the Jersey Shore Area School District, and Dr. Uhlig alleging that this harassment was the

result of age (D.O.B. 5/30/42), sex (female), and national origin (Chinese) based discrimination.

After Mrs. Fetter filed that discrimination charge, Superintendent Uhlig increased his harassment of her. Among other things, he downgraded her performance review on July 20, 2000 so that she would be ineligible for a raise beyond a cost of living increase; her department coordinator stipend of $1,955 was rescinded on October 25, 2000. On October 30, 2000 she received a memo critical of her school's petty cash account, which was off by 5 cents.

On December 5, 2000, Mrs. Fetter requested a medical leave for 3 months. This request was accompanied by a note from her family physician, Dr. Nesbitt, who sent a second note in support of this medical leave on December 22, 2000. On January 17, 2000, Dr. Rekhala, a psychiatrist, further recommended Mrs. Fetter be placed on sick leave. Dr. Rekhala issued a further supporting letter on February 8, 2000.

On March 1, 2001, Mrs. Fetter requested a sabbatical leave for restoration of health, accompanied by a letter from Dr. Rekhala.

On June 20, 2001, Mrs. Fetter requested that her sabbatical leave request be extended to include the forthcoming fall term, again supported by a note from Dr. Rekhala.

Superintendent Uhlig did not submit Mrs. Fetter's requests for sick leave or sabbatical leaves to the school board for action.

On February 21, 2002, counsel for Mrs. Fetter advised the solicitor to the Jersey Shore Area School District (J. David Smith) that Mrs. Fetter had recovered to the point where she could return to work on February 25, 2002. On February 22, 2002, the School District Solicitor wrote advising that Mrs. Fetter should not return to work because the District considered her to have abandoned her position. By letter dated February 26, 2002, through her counsel, Mrs. Fetter appealed the determination that she had abandoned her position, and requested a hearing thereon. By letter dated April 23, 2002 from Solicitor Smith Mrs. Fetter's counsel was advised that no hearing would be held.

On May 30, 2002, Mrs. Fetter filed an Amended Complaint with the Pennsylvania Human Relations Commission claiming that the School District's failure to grant her

medical leave, and sabbatical leaves and District's determination that she had abandoned her position, and its refusal to give her a hearing, were in retaliation for her filing her Complaint of discrimination on May 15, 2000.

On September 26, 2002, the Court of Common Pleas of Lycoming County ordered that Mrs. Fetter be granted a hearing as to whether or not she had abandoned her position. The School District appealed Judge Keiser's decision to the Commonwealth Court of Pennsylvania, which affirmed on October 7, 2003.

A hearing was held before the Jersey Shore Area School District on January 31, 2004. On March 15, 2004, the School Board issued an adjudication holding that Mrs. Fetter had abandoned her position. However, on January 14, 2005, the Court of Common Pleas of Lycoming County reversed that determination and found that Mrs. Fetter had not abandoned her position. That determination is currently on appeal before the Commonwealth Court of Pennsylvania.

**Liability**:

The Complaint has 6 counts:

Counts I, III, and V contend that the harassment which was the subject of Mrs. Fetter's May 15, 2000 Complaint to the PHRC was discrimination in violation of Title VII, the ADEA and the PHRA respectively.

Counts II, IV, and VI contend that the District's refusal to grant her sick leaves, sabbatical leave, its determination that she abandoned her job, its refusal to grant her a hearing and its refusal to allow her to return to work on February 25, 2002, were in retaliation for her filing her May 15, 2000 Complaint with the PHRA, in violation of Title VII, the ADEA and the PHRA respectively.

   C.   A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3.

       1.   Ophelia Fetter began full-time employment with the Jersey Shore Area School District as an Assistant Principal in August of 1993. In August of 1994 she was promoted to be Elementary School Principal.

2. As an Elementary School Principal, Mrs. Fetter was a professional employee with tenure in the Jersey Shore Area School District.

3. On or about May 15, 2000, Mrs. Fetter file a Complaint with the Pennsylvania Human Relations Commission alleging that she was illegally discriminated against in her employment by Superintendent Peter K. Uhlig, Sr., Assistant Superintendent Eugene Kurzejewski and the Jersey Shore Area School District.

4. On or about December 5, 2000, Mrs. Fetter was Principal of the Avis Elementary School. While her discrimination Complaint was still pending before the Pennsylvania Human Relations Commission, Mrs. Fetter requested a medical leave to begin December 5, 2000 and last for 3 months.

5. On or about March 1, 2001, Mrs. Fetter wrote Superintendent Uhlig and requested a sabbatical leave for restoration of health to begin effective January 22, 2001 to the end of that school year.

6. On or about June 20, 2001, Mrs. Fetter wrote Superintendent Uhlig and requested that the sabbatical leave she had previously requested for restoration of health be extended to the next school year.

7. On or about February 21, 2002, the School District was notified that Mrs. Fetter was well enough to return to work Monday morning, February 22, 2002. On February 22, 2002, Mrs. Fetter was advised that she should not report to work because the School District considered her to have abandoned her position.

8. On February 26, 2002, Mrs. Fetter appealed the determination that she had abandoned her job, and requested a hearing before the School Board thereon. However, Mrs. Fetter was advised on or about April 23, 2002 that the Board would not grant her request for a hearing.

9. On or about May 30, 2002, Mrs. Fetter filed an amended Complaints with the Pennsylvania Human Relations Commission, alleging that the School District's refusal to allow her to return work on February 25, 2002, and its refusal to grant her a hearing on the allegation that she had abandoned her position was in retaliation for her having filed her original Human Relations Commission Complaint on May 15, 2000.

10. On September 26, 2002, the Court of Common Pleas of Lycoming County found that Mrs. Fetter was entitled to a School Board Hearing and issued an Order to the Board of Directors of the Jersey Shore Area School District "to conduct a full and fair hearing on the issue as to whether or not [the Petitioner] Ophelia Fetter abandoned her position with the Jersey Shore Area School District."

11. On October 7, 2003, the Commonwealth Court of Pennsylvania affirmed the decision of the Lycoming County Court of Common Pleas that Mrs. Fetter was entitled to have a hearing on the question on whether or not she abandoned her position.

12. On January 29, 2004, the Directors of the Jersey Shore Area School District held a hearing on whether or not Mrs. Fetter had abandoned her job.

13. On or about March 15, 2004, the Directors of the Jersey Shore Area School District issued an Adjudication holding that Mrs. Fetter had abandoned her position as principal of the Avis Elementary School.

14. On January 12, 2005, the Court of Common Pleas of Lycoming County reversed the Adjudication of the Directors and held that Mrs. Fetter had not abandoned her job, and that she was entitled to be reinstated to her previous position as an Elementary School Principal of the Jersey Shore Area School District.

15. The Jersey Shore Area School District has appealed the Lycoming County Court's decision to the Commonwealth Court of Pennsylvania and Mrs. Fetter has not yet been returned to her position as Elementary School Principal with the Jersey Shore Area School District.

D. A brief description of damages (as of 6/30/06):

(1) Direct Economic Damages:

| | |
|---|---|
| Loss Sabbatical Pay | $ 34,337.50 |
| Net Wage Loss through 6/30/06 | 216,276.81 |
| Medical Insurance Premiums | 46,907.17 |
| Net Out-of-Pocket Medicals | 10,186.50 |
| Lost PSERS pension benefits | 192,979.04 |
| **TOTAL DIRECT ECONOMIC DAMAGES** | **$500,687.02** |

(2) Paid Legal fees and costs:
   to obtain Board hearing: $35,970.50
   to litigate abandonment
     issue            27,883.83
   federal suit           54,440.19
     TOTAL                     $118,295.02

(3) Estimated Value of Pain
    and Suffering                    200,000.00

E.   Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.

    (1)   Peter K. Uhlig, Sr. (Former Superintendent)
        24 Mush Dahl Rd.
        New Ringgold, PA

    (2)   Eugene Kurjewski (Former Assist. Superintendent)
        277 Jobs Run Rd.
        Jersey Shore, PA

    (3)   Ophelia Fetter
        748 Vallamont Drive
        Williamsport, PA

    (4)   James Fetter
        748 Vallamont Drive
        Williamsport, PA

    (5)   Adriane Craig (JSASD Business Administrator)
        JSASD Administration Building
        175 A&P Drive
        Jersey Shore, PA

    (6)   Sandy Moyer (JSASD Accounts Payable)
        JSASD Administration Building
        175 A&P Drive
        Jersey Shore, PA

    (7)   Andrew Uhl (Current Board Member)
        JSASD Administration Building
        175 A&P Drive
        Jersey Shore, PA

    (8)   Ted Fanning (Current Board Member)
        JSASD Administration Building
        175 A&P Drive
        Jersey Shore, PA

    (9)   Carol Schurer (Current Board Member)
        JSASD Administration Building
        175 A&P Drive
        Jersey Shore, PA

    (10)  Roy Johnson (Former School Board Member)
        322 Front Street
        Jersey Shore, PA

    **(11) Wayne Miller (Former School Board Member)**
        **1129 Little League Rd.**
        **Jersey Shore, PA**

    **(12) Michael Welch (Former School Board Member)**
        **175 Mount Pleasant Avenue**
        **Jersey Shore, PA**

    **(13) Lori Brooks (Former School Board Member)**
        **1307 Martins Rd.**
        **Linden, PA**

    **(14) Nancy Petroski (Former School Board Member)**
        **707 Torbert Lane**
        **Jersey Shore, PA**

    **(15) Vijay-Kumar Rekhala, MD**
        **699 Rural Avenue, Suite 301**
        **Williamsport, PA**

    **(16) Linda Earnest**
        **Retirement Benefit Specialist Supervisor**
        **PSERS**
        **5 N. 5th Street**
        **Harrisburg, PA**

    **(17) Custodian of Records[1]**
        **Jersey Shore Area School District**
        **175 A&P Drive**
        **Jersey Shore, PA**

    F.    Summary of testimony of each expert witness.

    **(1) Ms. Earnest – Assuming that there is no stipulation as to the Public School Employees' Retirement System (PSERS) damages, or to defer the PSERS damages to post trial proceeding, Ms. Earnest will testify as to the impact which the denial of sabbatical had on Mrs. Fetter's retirement account, as well as the impact the denial of allowing her to return to work has had on her retirement account. Ms. Earnest has done these calculations through June 30, 2006, a copy of which has been presented to opposing counsel, which calculations will be updated through the date of the trial.**

    **(2) Vijay-Kumar Rekhala, M.D. – (probably by deposition) Dr. Rekhala was Mrs. Fetter's treating psychiatrist.**

---

[1] Will be unnecessary if Claimant's Exhibits 7 and 10 are stipulated to as to authenticity.

He will testify that the harassing treatment which Mrs. Fetter received at her workplace during the year 2000 "resulted in her endogenous depression and anxiety." He will testify as to the severity of Mrs. Fetter's depression and co-morbid anxiety, which necessitated her being off work from December 2000 until February 2002. He will also testify that the denial of sick leave and sabbatical "contributed to her misery, despair and probably pushed her into deeper depression." He will also testify that when Mrs. Fetter was not allowed to return to work in February 2002 on the grounds that she had abandoned her position, this "was quite devastating to the patient".

    G.   Special comment about pleadings and discovery, including depositions and the exchange of medical reports.

        (1)  The depositions of three School Board members – Andrew Uhl, Ted Fanning, and Wayne Miller are to be taken August 1, 2006.

        (2)  Mrs. Fetter has been employed since May 2, 2003. Mitigation of her wage losses is not at issue in this case.

        (3)  The Defense has no medical expert witnesses.

        (4)  Plaintiff's Exhibits 7 and 10 have been coded to preserve the confidentiality of those school employees' medical records, in accordance with the Court's Order of 2/1/06.

    H.   A summary of legal issues involved and legal authorities relied upon.

        Plaintiff's legal counsel does not think there are any real legal issues. The issues are factual – did the JSASD discriminate against Mrs. Fetter and retaliate against her for her filing her discrimination Complaint.

    I.   Stipulations desired.

        (1)  Authenticity of exhibits.

        (2)  That former Superintendent, Assistant Superintendent and present Board members, former Board members and JSASD employees will attend the trial without subpoenas.

        (3)  PSERS damages, or defer PSERS damages to post-trial proceedings.

        (4)  Defer counsel fees to post-trial proceedings.

        (5)  Calculate prejudgment interest post-trial.

    J.   Estimated number of trial days.

3½ days

K.   Any other matter pertinent to the case to be tried.

**None.**

L.   Pursuant to Local Rule 16.3 appended to this memorandum is a prenumbered schedule of exhibits, with brief identification of each, on the clerk's Exhibit Form.

**Attached hereto.**

M.   Certificate as required under Local Rule 30.10.  **Dr. Rekhala's deposition has not yet been taken.  Plaintiff's counsel certifies he will meet, pre-trial, with Defense counsel, for the LR 30.10 review.**

N.   Factual Issues:

**(1)  Did Superintendent Uhlig discriminate against Ophelia Fetter on account of her sex, Chinese national origin, or age, when in January of 2000 the Superintendent replaced Mrs. Fetter's secretary, without her knowledge or approval, and belatedly notified her of this personnel action?**

**(2) Did Superintendent Uhlig discriminate against Ophelia Fetter when in February 2000, the Superintendent discouraged Mrs. Fetter from pursuing a superintendent's certification by telling her she was too old to become a superintendent?**

**(3)  Did Superintendent Uhlig discriminate against Ophelia Fetter when in February of 2000 the Superintendent discouraged her suggestion that she pursue Blue Ribbon school status for the Avis Elementary School?**

**(4)  Did Superintendent Uhlig discriminate against Ophelia Fetter when the Superintendent ignored, belittled and/or insulted Mrs. Fetter at staff meetings in March and April of 2000?**

**(5)  Did Superintendent Uhlig discriminate against Ophelia Fetter when the Superintendent issued her a reprimand on April 26, 2000?**

**(6)  Did Superintendent Uhlig discriminate against Ophelia Fetter when the Superintendent issued her a reprimand on May 11, 2000?**

**(7)  Did the Jersey Shore Area School District retaliate against Mrs. Fetter because she filed a Complaint with the Pennsylvania Human Relations Commission on May 15,**

2000 when it refused to giver her sabbatical leave for health restoration which she requested on March 1, 2001?

    (8) Did the Jersey Shore Area School District retaliate against Mrs. Fetter for her filing a discrimination Complaint when it refused to grant her an extension of her sabbatical leave request of June 20, 2001?

    (9) Did the Jersey Shore Area School District retaliate against Mrs. Fetter for her filing a discrimination Complaint in maintaining that Mrs. Fetter abandoned her position as Elementary School Principal?

    (10) Did the Jersey Shore Area School District retaliate against Mrs. Fetter for her filing a discrimination Complaint when it refused to allow Mrs. Fetter to return to work on February 25, 2002?

    (11) Did the Jersey Shore Area School District retaliate against Mrs. Fetter for her filing a discrimination Complaint when refused to give her a hearing to challenge its abandonment determination?

    (12) Did the Jersey Shore Area School District retaliate against Mrs. Fetter for her filing a discrimination Complaint when it found that she had abandoned her position?

    O.   Special verdict questions. **As of the preparation of this Pretrial Memorandum, Plaintiff's counsel and Defense counsel have begun, but not completed, discussions on special verdict questions. A proposed interrogatory has been received by counsel for potential intervener, which glosses over some important distinctions within this six count Complaint. For example, theoretically a jury could make a finding of no discrimination with respect to the refusal to grant sabbatical leave, but could find discrimination on refusal to allow her to return work, and vice versa. While all of the wage loss and retirement credit post-February 25, 2002 would fall into the same factual question, the damage related to failure to grant sabbatical leave, and the lost retirement credit related thereto, is a separate component of damages.**

    **Similarly, with attorneys fees and costs, (which Plaintiff thinks should be deferred post-trial), $35,970.50 in legal fees and costs were paid simply to obtain a board hearing. $27,883.83 legal fees and costs were paid to litigate the abandonment issue. Again, it is theoretically possible that a jury might come to different conclusions with respect to**

- 10 -

**the discrimination with respect to refusal to provide a board hearing, as opposed to litigating the abandonment issues.**

**Hopefully by the time of our pretrial conference, further progress will be made on this special verdict question issue.**

    Respectfully submitted,

    STROKOFF & COWDEN, P.C.

    By:___/S/ Elliot A. Strokoff___
       Elliot A. Strokoff, Esq.
       I.D. No. 16677

DATE:   7/27/06   132 State Street, PO Box 11903
    Harrisburg, PA  17108-1903
    (717) 233-5353